UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO. 8:17-cr-270-T-33MAP

ENITE ALINDOR

**GOVERNMENT'S MOTION TO
PRECLUDE EXPERT TESTIMONY AND
INCORPORATED MEMORANDUM OF LAW**

COMES NOW the United States of America, by and through its representative, the undersigned Assistant United States Attorney, and respectfully moves that this Court grant the Government's Motion to Preclude Expert Testimony. In support thereof, the United States submits as follows:

1. Late on the afternoon of January 10, 2018, counsel for the defendant sent correspondence to the United States in which she indicated that she intended to call Richard Orsini as an expert witness on behalf of the defendant. As to the scope of his proposed testimony, counsel for the defendant indicated that his possible testimony would be that "it was probable (proof by a preponderance of evidence")" that writer of the signature of "Enite Alindor" contained in an I-589 application form which the Immigration and Naturalization Service ("INS") received in February 1997 was not made by the same person whose signature was contained on a fingerprint card bearing

the name "Enite Alindor" which the INS also held in that same alien A file. Report of Document Examination (January 8, 2018) at 4. Without any excuse or explanation, counsel for the defendant sent the undersigned notice of that expert witness and a copy of his opinion via an e-mail message at 5:21 PM on January 10, 2018.

      2.      Peculiarly, counsel for the defendant had first mentioned to the undersigned something about the existence of such an expert witness at a meeting which counsel for the defendant had previously asked for with representatives of the United States. That meeting took place earlier on that very afternoon, January 10, 2018. The un-related purpose of that meeting of counsel was to review the contents of the Alindor and Dureland A files involved in this case. It was at that meeting that counsel for the defendant first disclosed the existence of such an expert witness. Even then, however, counsel for the defendant did not provide any further amplification or details of Orsini's work or proposed testimony, nor did she even identify the witness or his opinions.

It was again at that same meeting that the undersigned advised counsel for the defendant that this was the first time he had any knowledge of such a defense expert witness and that disclosure of that witness at such a time was woefully late. The United States then only received the e-mail disclosure of

particulars about Orsini's contemplated testimony some three hours later, although the attached Orsini report itself was dated January 8, 2018.

3. In the Court's June 5, 2017 Pretrial Discovery Order in this case, United States Magistrate Judge Pizzo laid out the timetables for pre-trial discovery in this case. He first directed the United States to make its initial discovery disclosures within 14 days of the date of the court's June 5 order. Doc. 10 at 2. He then directed the defendant "to promptly provide" a number of items, including "[a]ny reports and tests covered by Rule 16(b)(1)(B)." Id. That rule requires the disclosure and inspection of "the reports or records of any physical or mental examination and any scientific test or experiment if (a) the item is within the defendant's possession, custody, or control: and (b) the defendant intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony." Fed. R. Crim. P. 16(b) (1) (B). This rule clearly would apply to the Orsini testimony and report. In addition, Magistrate Judge Pizzo's order directed the disclosure of any "written summary of any expert testimony" in the case under " Rules 702, 703, or 705 of the Federal Rules of Evidence". Doc. 10 at 2. This language would also seem to apply most clearly to the contemplated testimony of witness Orsini.

4. Due to the lateness of the notice as to this witness and his proposed testimony and the irrelevance of that proffered testimony as to the issues in the case, the United States believes that the testimony of Orsini must be subject to exclusion. Fed. R. Crim. P. 16(b)(1)(C). The United States submits that this testimony, if proffered, is both misleading, inaccurate, and confusing.

5. For the reasons set forth in the incorporated Memorandum of Law, the United States respectfully urges this Court to grant its Motion to Preclude Expert Testimony.

## MEMORANDUM OF LAW

Federal Rule of Evidence 702 provides that an expert witness may testify "in the form of an opinion or otherwise" if his "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. The Supreme Court has observed that there are certain minimal "gatekeeping" obligations on a court necessary to ensure that an expert's testimony "is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).

Even the testimony of a proposed expert witness is subject to the dictates of the other rules of evidence as well. Among the considerations which this Court must take into account in deciding whether and to what

extent to admit such proposed expert testimony is its potential value and ability to assist the trier of fact. Expert testimony might still be subject to preclusion if the probative nature of such testimony is substantially outweighed by its potential to confuse or mislead the jury. United States v. Frazier, 387 F.3d 1244, 1263 (11th Cir. 2004), cert. denied, 544 U.S. 1063 (2005). "[E]xpert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district court must take care to weigh the value of such evidence against its potential to mislead or confuse." Id. Thus, even within the realm of "expert" testimony, such testimony must still be relevant as an initial criterion for admission. It is only relevant if it not only has a tendency "to make facts more or less probable than it would be without the evidence" but also that those very facts must be "of consequence in determining the action." Fed. R. Evid. 401. Furthermore, even if the proposed testimony is "relevant", it may still be subject to preclusion if "its probative value is outweighed" by a danger of a number of things, to include "confusing the issues" or "misleading the jury" or "wasting time". Fed. R. Evid. 403.

The central issue in the trial of this case is whether the defendant made false statements in immigration forms and in an effort to obtain naturalization as a United States citizen. Evidence exists that she initially applied for asylum protection from the INS early in 1997 using the name Enite Alindor. Although

Alindor did submit a Form I-589 to initiate the process for obtaining asylum, she did not complete the face-to-face interview and thus failed to obtain asylum status. Moreover, due to a failure to appear as directed before the Immigration Court when INS referred Alindor to that court for adjudication, the Immigration Court ordered Alindor to be removed from the United States in October 1997 and issued a warrant for her arrest.

Some time shortly after the initiation of the Alindor asylum petition, Odette Dureland (later claiming to be Yvrose Policin) filed to obtain status in the United States as a derivative result of her brother's asylum status. Dureland (also known as Policin) filed other applications with INS and immigration authorities over the years. These were all contained within an A file which the INS created in that identity- Dureland. Dureland was ultimately able to obtain United States citizenship in 2012.

Although the defense's notice is rather sketchy, the United States anticipates that witness Orsini will testify that the writer of the signature "Enite Alindor" on the Form I-589 in the A file the INS held under that name was not the writer of the "Alindor" signature appearing on a fingerprint card which was also part of that very same A file. He does not appear to intend to testify as to any similarity or dis-similarity between that "Alindor" signature and the handwriting of his client, the defendant, or any handwritings or

signatures contained in the separate Dureland A file. Orsini merely appears to postulate that the person who signed the "Alindor" form on the Form I-589 was "probably" (by some " preponderance of the evidence") not the individual who made the signature on the fingerprint card in that very same file. He appears to have no comment on the handwriting of the defendant herself as it relates to this or any other issue

      The relevance of his testimony is thus very puzzling. His proffered testimony relates not at all to the handwriting of the defendant herself or its identification (or not) as the source of the two "Alindor" signature in that A file. It is thus of no consequence as to the crucial factual and legal issue in the case, which is the identity of the person responsible for the filing of the Alindor Form I-589 and its associated contents. Not only does it ignore the fingerprint evidence tying the "Alindor" Form I-589 to the numerous immigration forms contained which "Odette Dureland" (and/or "Yvrose Policin") filed with the INS and Citizenship and Immigration Services in order to obtain United States citizenship. Moreover, its admission would merely serve to confuse a trial jury as to its relevance and value, since it says not one thing about the handwriting of the defendant and the association between this defendant and those two separate A files. That is the core issue of factual and legal apparent contention in this case. The import of the Orsini

testimony is thus unclear: while it suggests, perhaps, that two different individuals may have affixed the Alindor signature on separate documents in the Alindor A file, the proposed testimony says absolutely nothing at all as to whether at least one of those individuals was the defendant, whose handwriting was readily available to Orsini to receive, review, and analyze.

In addition, aside from the relevance objection to the proffered line of Orsini testimony, there is the issue of its woefully late disclosure. As late as December 14, 2017, again on the very eve of a scheduled date for the commencement of this trial on December 18, 2017, counsel for the defendant sought and obtained a continuance of the trial. Her sole grounds was her purported need, at that time, to procure the testimony of an "expert" witness/attorney on immigration matters. At that December 14 status hearing before the Court, she made no mention of her need for any other witness and never mentioned any other basis for her request for a continuance. The Court, very reluctantly, granted that motion to continue the trial at that time, based upon counsel's representations of her needs to be ready for trial. Now, again at the very "eleventh hour", counsel for the defendant seeks to disclose, pursuant to Fed. R. Crim. P. 16(b)(1)(b),(C), the anticipated testimony of this "expert" witness, not on immigration matters and procedures but as to handwriting,

although his testimony does not even relate directly at all to the handwriting of the defendant on trial before this Court.

As the Eleventh Circuit has noted, "[w]hile the Constitution unquestionably provides a defendant with the right to be heard, this right is not unbounded." United States v. Frazier, 387 F.3d 1244, 1271 (11th Cir. 2004). Citing the Supreme Court, the court went on to observe that the defendant in a criminal case, much like the United States, " 'must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " Id. (quoting Chambers v. Mississippi, 410 U.S. 284, 302 (1973)). Thus, the same procedural and evidentiary rules apply to both parties in the case.

The Court maintains sole discretion for violations of discovery orders and "[w]hile the rights of the accused to present a defense is a substantial right, that right is not boundless." United States v. Yates, 733 F.3d 1059, 1065 (11th Cir. 2013). Relying upon that principle, the Eleventh Circuit there upheld the district court's preclusion of an expert witness' testimony due to its very late disclosure to the United States. It has done so before in other cases. United States v. Blair, 493 Fed. App'x 38, 53 (11th Cir. 2012); United States v. Katopodis, 428 Fed. App'x 902, 904-05 (11th Cir.), cert. denied, 565 U.S. 990

(2011); United States v. Petrie, 302 F.3d 1280 (11th Cir. 2002); United States v. Prather, 205 F.3d 1265 (11th Cir.), cert. denied, 531 U.S. 879 (2000).

The Petrie opinion is perhaps most instructive as to this case. In that case, the defendant was charged with conspiracy to commit money laundering. The defendant contended that he was prejudiced by the district court's preclusion of an expert witness who was to testify as to letters of credit and syndication. The court noted that the defendant's counsel waited until the Friday afternoon before the start of the trial on the following Monday to disclose the existence and testimony of that expert witness. Id. at 1288. The Eleventh Circuit also noted that the trial of the case had been pending at that time for almost a year and a half between the return of the superseding indictment in that case and this late-hour disclosure. Id. The court there, too, noted that relief from any violation of discovery rules "lies within the discretion of the trial court". Id. On those facts, it upheld the lower court's preclusion of that supposed expert's testimony at trial.

While not as egregious in the amount of time and delay as the failure to disclose was in the Petrie case, the actions of the defendant here are very similar. She failed to heed the "prompt" disclosure terms of the Court's June 5, 2017 Pretrial Discovery Order. Being well aware of the factual issues of significance since receiving the government's discovery disclosures on June

16, 2017, counsel had full ability to consider the need for possible "expert" witnesses as to the issue of the association of this defendant with the contents of the Alindor A file. Yet, in the almost seven months since the United States provided her with discovery and the full contents of both the Alindor and Dureland A files, she appears only to have considered and contemplated the use of an immigration law and procedures expert, and that as late as December 14, 2017. Now, almost one month to the day later, counsel has provided disclosure of a handwriting expert whose testimony seems totally irrelevant and whose existence was a mystery until now. In many ways, this is similar to the facts in the Petrie case, where counsel for defendant Petrie similarly waited a very long time to make its disclosure. United States v. Petrie, 302 F.3d at 1290 n.9.

The proposed remedy of preclusion, although somewhat harsh, is due to the egregious lateness of notice. Preclusion is also an accepted remedy in such a case. Assuming, arguendo, a reluctance to impose such a remedy, a less drastic remedy would involve granting the United States sufficient time to review this proposed expert testimony and opinion and submit it for expert analysis and comment. This is not something that can be done quickly or simply, in light of the much more immediate demands and exigencies of trial preparation on the part of the prosecution team at this time. The United States

is just now in the preliminary stages of reaching out to experts in the field of handwriting analysis to see how long it would take to conduct a thorough analysis of the Orsini methodology, testimony, and opinion. It is unclear when government experts can expeditiously do so. A continuance of the trial for a limited time to allow that analysis would be something of a less harsh remedy for the severe discovery violation here.

WHEREFORE, based upon the foregoing arguments and authorities, the United States respectfully requests that this Court grant its Motion to Preclude Expert Testimony or, alternatively, the continuance of the trial as set forth in this motion.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: */s/ Jay L. Hoffer*
Jay L. Hoffer
Assistant United States Attorney
Florida Bar No. 0910708
400 North Tampa Street, Suite 3200
Tampa, Florida   33602
Telephone:   (813) 274-6125
Facsimile:   (813) 274-6178
E-mail:   jay.hoffer@usdoj.gov

U.S. v. Enite Alindor					Case No. 8:17-cr-270-T-33MAP

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Irina Hughes, Esq.
    Assistant Federal Public Defender

    */s/ Jay L. Hoffer*
    Jay L. Hoffer
    Assistant United States Attorney
    Florida Bar No. 0910708
    400 North Tampa Street, Suite 3200
    Tampa, Florida   33602
    Telephone:  (813) 274-6125
    Facsimile:   (813) 274-6178
    E-mail:  jay.hoffer@usdoj.gov