UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No.: 8:17-CR-270-T-33MAP

ENITE ALINDOR,
    a/k/a Odette Dureland
    a/k/a Yvrose Policin.

_____

## DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

The Defendant, Odette Dureland,[1] by and through undersigned counsel, submits this Renewed Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(c). In determining whether a jury's verdict can sustain a defendant's renewed challenge based upon the sufficiency of the evidence, this Court must decide whether the evidence, viewed in the light most favorable to the government, is adequate to allow "any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Fed. R. Crim. P. 29(c). This Court is directed to order an acquittal if the evidence is insufficient to sustain a conviction.

At the conclusion of the government's case in chief, the Defendant moved for judgment of acquittal on both counts. *See* Doc. 87 at 2; Doc. 88. This Court denied Defendant's Motion "for the reasons stated by the Government on the record." Doc. 89. For the three reasons set forth below, the United States failed to prove that the Defendant

---

[1] As Ms. Dureland maintained prior to and during her trial, she has never used, or been known by, the name "Enite Alindor." Doc. 49 at 1 n.1; *see* Doc. 90. For the purposes of this Motion, Ms. Dureland will refer to herself as such or as "Defendant."

1

committed the offense, and no rational juror could have concluded that she obtained naturalization contrary to the law, in violation of 18 U.S.C. § 1425(a).

> **1. No reasonable jury could find Ms. Dureland guilty of violating 18 U.S.C. § 1425(a) because she unequivocally qualifies for citizenship.**

First, this Court should vacate the judgment on Count One because it is uncontroverted that Ms. Dureland qualified for citizenship through the derivative petitions of her brother, Marcel Polissaint, and her husband, Malio Dureland. *See* Doc. 99 at 156-57, 160, 169. Ms. Dureland's naturalization application was approved by the USCIS on July 16, 2012 and ten days later she was issued a certificate of naturalization. At trial, Ms. Dureland denied having filed any asylum application in 1997 under the name "Enite Alindor," and she disputed the government's theory that investigation into the 1997 asylum application under the name "Enite Alindor" ("1997 Alindor Application") would have disqualified her for citizenship. *See* Doc. 49; Doc. 90. Separate and apart from this central disagreement at trial, however, the government presented absolutely no evidence that Ms. Dureland does not otherwise qualify for citizenship. *See* Docs. 98, 99, 103. This alone entitles her to a judgment of acquittal for 18 U.S.C. § 1425(a).

In *Maslenjak v. United States*, the Supreme Court addressed what the government needs to prove to obtain a conviction under 18 U.S.C. § 1425(a). 137 S. Ct. 1918 (2017). Where, as here, the government relies on an "investigation-based theory," it must show that a defendant lied about facts sufficiently relevant to a naturalization criterion, such that an immigration official would have conducted further investigation that would "predictably have disclosed" some legal disqualification. *Id.* at 1329. Critically, the Supreme Court explained that "[e]ven when the Government can make its two-part showing, however, the

defendant may be able to overcome it," because "qualification for citizenship is a complete defense to a prosecution brought under § 1425(a)." *Id.* at 1330.

Although Ms. Dureland argued this in her trial brief, *see* Doc. 49 at 14, the government failed to understand *Maslenjak*'s directive that regardless of Defendant's alleged misrepresentations, her separate means of obtaining naturalization was a "complete defense" to prosecution. 137 S. Ct. at 1330; *see* Doc. 101 at 29-33. At the jury charge conference, it was clear that the government and this Court misinterpreted this portion of *Maslenjak*.[2]

The government proceeded under the theory that Ms. Dureland filed a fraudulent asylum application under the name Enite Alindor in 1997, lied about that application in 2012, and that had the immigration officials known that, she would have been denied citizenship. *See* Doc. 90.[3] However, the government presented no evidence that Ms. Dureland did not qualify, separate and apart from these alleged misrepresentations, for citizenship. *Maslenjak* clarifies that regardless of an individual's misrepresentations, that individual's "qualification for citizenship is a complete defense to a prosecution brought under 1425(a)." 137 S. Ct. at 1930. The Supreme Court articulated that "[s]ection 1425(a) is not a tool for denaturalizing

---

[2] MS. HUGHES: So we can present that if Miss Dureland qualified for a citizenship, then it would be a complete defense in the case. If you give [the Government's] instruction, that means the jury can never consider our defense and it's going to be contrary to law.

THE COURT: I don't think that's true. What do you say, Mr. Hoffer.

MR. HOFFER: That's not true. It gives them the alternative. They look at the first. If they find the defendant guilty, end of story.
Doc. 101 at 31-32.

[3] Although a transcript of the government's closing argument is not yet available, the government's theory of guilt is clear from the examination of witnesses Fagan, Agathos, Lockhart, Woods and Shavers. *See* Docs. 98, 99, 103, 101.

people who, the available evidence indicates, were actually qualified for the citizenship they obtained." *Id.*

The Supreme Court makes plain that regardless of what any investigation into the 1997 Alindor Application *would have* revealed, Ms. Dureland's qualification for naturalization through the other derivative applications is a "complete defense" to prosecution under 18 U.S.C. § 1425(a). *Maslenjak*, 137 S. Ct. at 1930. The government presented no evidence disputing Defendant's qualification for citizenship. Accordingly, in light of *Maslenjak's* recent explanation of this "complete defense," no reasonable jury could have concluded that Defendant violated 18 U.S.C. § 1425(a), and this Court should vacate her conviction for Count One. 137 S. Ct. at 1330; *see* Fed. R. Crim. P. 29(c).

2. **The government did not provide evidence that Defendant made a false statement, required for 18 U.S.C. § 1425(a).**

As Ms. Dureland argued prior to and at trial, she never used or provided the name "Enite Alindor" on any document. Doc. 49 at 9-10; *see* Doc. 90.[4] The government did not prove that Defendant filed the 1997 Alindor Application, or lied about having done so in 2012. *See* Docs. 98, 99, 103, 101. None of the government's witnesses recalled having met "Enite Alindor," and the only ones who recognized Defendant were involved in her arrest on the instant charges. *See* Doc. 99 at 150, 154-55 (Officer Shavers never met Enite Alindor or Ms. Dureland); *id.* at 254-67 (Special Agent Perez identified Ms. Dureland because he arrested her in 2017); *see* Doc. 103 at 5-151 (testimony of Agent Lockhart). Accordingly, the government has not shown that the Defendant misrepresented her identity or that she

---

[4] Although a transcript of Defendant's closing argument is not available at this time, her trial brief presents her explanation, at trial, that she never filed any document under the name "Enite Alindor." *See* Doc. 49.

made false statements, and this Court should vacate her convictions for both Counts. *See* Docs. 1, 96.

The government's theory that Defendant filed the 1997 Alindor Application is based on the stand alone fingerprint card bearing the handwritten date "2-8-97," and some similarities between "Enite Alindor's" physical description and Ms. Dureland's written physical description. Doc. 90. However, the government did not present evidence that the 1997 Alindor Application was actually completed by the Defendant.[5] Indeed, Officer Fagan testified that the application appeared to have been filled out by a native English speaker, which the Defendant is not, but that the application did not indicate that a separate preparer had been used. Doc. 99 at 26.

However, that Ms. Dureland's fingerprints match those on the card associated with the 1997 Alindor Application is insufficient to establish that she wrote or submitted that Application. *See* Doc. 99 at 15 (Officer Fagan testified that when looking at a fingerprint card, it would be impossible to know when the prints were taken and when it was filled out); *id.* at 217-18 (Officer Shavers affirmed that at the time of the 1997 Alindor Application, it was "easy to submit somebody else's fingerprints."). Indeed, retired immigration officer Valerie Agathos testified that when the immigration service used physical fingerprints—a practice they discontinued in 1998—the fingerprint card was sent to the FBI to see if there was a criminal history match, and the card itself did not even stay in the A-file of an asylum applicant. Doc. 99 at 28, *id.* at 74. The government did not present evidence that fingerprint

---

[5] Retired Officer Agathos testified that she recognized her own initials and handwriting from the A-file of "Enite Alindor," the 1997 Alindor Application, but she did not recall the actual application itself or having ever met the Defendant, Ms. Dureland. *See* Doc. 99 at 70, 72.

5

cards were used to identify applicants for naturalization: in fact, they were only sent to the FBI to run background criminal checks.  *See, e.g.*, Doc. 98 at 5-22 (testimony of USCIS Officer Isabel Gomez); Doc. 98 at 22-75, Doc. 99 at 5-14 (testimony of asylum officer James Fagan).  Plus, the other similarities between Defendant's information and facts in the 1997 Alindor Application are not sufficient to lead to the inference that Defendant filed that application.

Furthermore, the government's theory that Defendant filed this false asylum application, based entirely on the circumstantial identity evidence, defies a logical explanation.  *See* Doc. 49 at 11-12.  Because Ms. Dureland had legitimate refugee status, lacked a criminal history, and had the petitions of her brother and husband to support her naturalization, she had no conceivable need to file the 1997 Alindor Application.  *See* Doc. 49 at 11-12.

The presence of Defendant's fingerprints on the card associated with the 1997 Alindor Application is insufficient to establish that she made the false statements necessary for conviction under § 1425(a).  *See* Doc. 99 at 15.  In light of the insufficient proof that Ms. Dureland is "Enite Alindor" or has ever used that name, this Court should grant Ms. Dureland's renewed motion for acquittal.

**3.    The government did not establish that Defendant procured citizenship with a false statement, in violation of 18 U.S.C. § 1425(a), as required by *Maslenjak*.**

Even if the government established that Ms. Dureland filed the 1997 Alindor Application, it did not present sufficient evidence such that a reasonable juror could conclude that investigation "would predictably have disclosed some legal disqualification," and therefore that Defendant's misrepresentation "procured" her citizenship.  *Maslenjak*, 137 S.

6

Ct. at 1929. In order to obtain a conviction under the "investigation-based theory" of § 1425(a), the government must present evidence that a misrepresentation of fact made during the naturalization process would have led to an investigation, the result of which would have disqualified the individual from citizenship. *Id.* at 1928-29. Critically, "[t]he proper causal inquiry under § 1425(a) is framed in objective terms: To decide whether a defendant acquired citizenship by means of a lie, a jury must evaluate how knowledge of the real facts would have affected a reasonable government official *properly applying naturalization law*." *Id.* at 1928 (emphasis added).

At trial, the government asked several witnesses about "good moral character," but instead of introducing the objective law, several immigration agents provided their subjective views based upon a series of hypotheticals. *See, e.g.*, Doc. 98 at 67 (the government asked Officer Fagan whether "the fact that an individual maybe used one name in this application, but had applied previously using another, would that be important to know?" and Officer Fagan answered that hypothetical in the affirmative, that "it can go into their propensity to tell the truth."); Doc. 99 at 61-62 (Officer Agathos explaining her understanding of good moral character); *id.* at 86 (Officer Agathos testifying that if someone provided false information about a marriage or divorce "it goes to good moral character"); Doc. 99 at 179 (Officer Shavers testifying that the term "good moral character" comes from "court records and courts proceedings and it's also found in our regulation," and that adjudicating officers "ascertain whether or not the person is amenable to good moral character based on the background checks."). With the testimony of several current and former immigration officers, the government attempted to show that a false statement would be sufficient to justify denial of naturalization by merely suggesting disqualification for naturalization, or

leading to "facts relevant" to a petition for naturalization, or raising a "fair inference" that a disqualifying fact—lack of good moral character—existed. This contention, however, is contrary to the Supreme Court's recognition that the system is "to provide little or no room for subjective preferences or personal whims" and "the proper causal inquiry under § 1425(a) is framed in objective terms." *Maslenjak*, 137 S. Ct. at 1928. *Maslenjak* requires proof of ultimate facts, that would have justified denying naturalization, or after further investigation "would predictably have led to other facts warranting" denial of naturalization. *Id*. at 1923.

In addition, the Supreme Court emphasized that disqualification for citizenship must be evaluated in objective terms "applying naturalization law." *Maslenjak*, 137 S. Ct. at 1928. According to the statute which the government wanted the jury to infer would have led to disqualification, only "a person of good moral character" is eligible for naturalization, 8 U.S.C. § 1427(a)(3), and "one who has given false testimony for the purpose of obtaining any benefits under this chapter" cannot be found to be a person of good moral character, *id.* § 1101(f)(6); *see Kungys v. United States*, 485 U.S. 759, 779-80 (1988). The statute further clarifies that no one can be found to be of "good moral character" if they meet one of nine defined criteria, including "giv[ing] false testimony for the purposes of obtaining any benefits under this chapter." *See* 8 U.S.C. § 1101(f).

The jury, however, was not instructed under which naturalization law Ms. Dureland would have been disqualified, or why she would have been disqualified. *See* Doc. 95. It was insufficient for the government to present witnesses hypothesizing what may or may not have resulted had Defendant filed the 1997 Alindor Application and had immigration officials later learned about that fact. *See, e.g.*, Doc. 98 at 67-74 (Officer Fagan discussing a

hypothetical scenario); Doc. 99 at 61-63 (Officer Agathos discusses a hypothetical inquiry into an applicant's moral character).

Although the government showed that the 1997 Alindor Application was denied and "Enite Alindor" was deported in absentia, it did not prove that Defendant filed that application. Doc. 98 at 63-64; *see supra*, 2. Critically, without being instructed on how "a reasonable government official properly appl[ies] naturalization law," there was no evidence that alleged false statements by Ms. Dureland , on their own, would have justified denying naturalization, and no reasonable juror could have concluded that, even if Defendant filed the 1997 Alindor Application, her attempts to naturalize would have been unsuccessful as a result of such investigation. *Maslenjak*, 137 S. Ct. at 1928. Accordingly, no reasonable juror could find that investigation into the 1997 Alindor Application "would predictably have disclosed some legal disqualification" for Mr. Dureland's naturalization, which is required to sustain a conviction for 18 U.S.C. § 1425(a). *Maslenjak*, 137 S. Ct. at 1929.

## CONCLUSION

For these reasons, the government's evidence was insufficient to sustain a conviction pursuant to 18 U.S.C. § 1425(a) or 18 U.S.C. § 1015(a). Accordingly, Defendant renews her motion and asks this Court to order an acquittal pursuant to Federal Rule of Criminal Procedure 29(c).

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*/s Irina Hughes*
Irina Hughes
Assistant Federal Public Defender
Florida Bar No. 0066198
400 North Tampa Street
Suite 2700
Tampa, FL. 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Irina_Hughes@fd.org


*/s Aliza Hochman Bloom*
Aliza Hochman Bloom
Assistant Federal Public Defender
Florida Bar No. 101481
400 North Tampa Street
Suite 2700
Tampa, FL. 33602
Telephone: (813) 228-2715
Facsimile: (813) 228-2562
Email: Aliza_Bloom@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on this March 14, 2018, a true and correct copy of the foregoing was filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Assistant United States Attorney Jay Hoffer.

*/s Irina Hughes*
Irina Hughes
Assistant Federal Public Defender
Florida Bar No. 0066198
400 North Tampa Street
Suite 2700
Tampa, FL. 33602
Telephone:  (813) 228-2715
Facsimile:  (813) 228-2562
Email:  Irina_Hughes@fd.org

*/s Aliza Hochman Bloom*
Aliza Hochman Bloom
Assistant Federal Public Defender
Florida Bar No. 101481
400 North Tampa Street
Suite 2700
Tampa, FL. 33602
Telephone:  (813) 228-2715
Facsimile:  (813) 228-2562
Email:  Aliza_Bloom@fd.org