UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                              Case No.: 8:17-cr-270-T-33MAP

ENITE ALINDOR,
     a/k/a Odette Dureland,
     a/k/a Yvrose Policin

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant's Renewed Motion for Judgment of Acquittal (Doc. # 104), filed on March 14, 2018. The United States of America responded in opposition on March 19, 2018. (Doc. # 105). For the reasons that follow, the Court denies the Motion.

I.   **Background**

On May 25, 2017, Defendant Enite Alindor, a/k/a Odette Dureland and Yvrose Policin, was indicted for obtaining naturalization contrary to law, in violation of 18 U.S.C. § 1425(a), and making false statements under oath in the naturalization process, in violation of 18 U.S.C. § 1015(a). (Doc. # 1). The indictment alleges — and the United States maintained at trial — that Defendant obtained citizenship in

1

2012 under the name Odette Dureland by making false statements in her N-400 application. (Id.).

The United States argued Defendant made numerous false statements as to: "(a) her use of another name and identity; (b) her history and contacts with immigration officials regarding removal, exclusion, and deportation from the United States; (c) her prior arrest history; (d) her denial of providing false and misleading information and documentation to a United States government official in applying for immigration benefits and to prevent deportation, exclusion, and removal; and (e) her eligibility for naturalization based upon those prior false statements." (Id. at 2). "Specifically, the [D]efendant failed to acknowledge that in February 1997, she petitioned the INS for asylum protection under the name 'Enite Alindor'"; she "denied the use of names other than 'Odette Dureland' and/or 'Yvrose Policin'"; and she "did not acknowledge or admit in her N-400 form her arrest history in . . . Haiti." (Doc. # 105 at 2).

After a four-day trial, a jury convicted Defendant of both obtaining naturalization contrary to law, in violation of 18 U.S.C. § 1425(a), and making false statements under oath in the naturalization process, in violation of 18 U.S.C. § 1015(a). (Doc. # 96). Defendant now seeks a judgment of

acquittal on three grounds: (1) that no reasonable jury could have convicted her because she qualifies for citizenship; (2) the government did not provide evidence that Defendant made a false statement; and (3) the government did not establish that Defendant procured citizenship with a false statement. (Doc. # 104). The United States responded, and the Motion is ripe for review.

## II.  **Legal Standard**

"After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). As Defendant has done here, "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2).

Upon a motion under Rule 29, the district court must determine "whether the evidence, examined in a light most favorable to the Government, was sufficient to support the jury's conclusion that the defendant was guilty beyond a

reasonable doubt." <u>United States v. Williams</u>, 390 F.3d 1319, 1323–24 (11th Cir. 2004). "Thus, the test is whether a reasonable jury could find, beyond a reasonable doubt, that Defendant is guilty of [committing] the crimes alleged in the indictment." <u>United States v. Beverly</u>, No. 17-CR-60093, 2018 WL 985073, at *1 (S.D. Fla. Feb. 20, 2018)(citing <u>United States v. Macko</u>, 994 F.2d 1526, 1532 (11th Cir. 1993)).

Applying this test, the Court must "'view the evidence in the light most favorable to the government,' drawing 'all reasonable inferences and credibility choices' in the Government's favor." <u>United States v. Merrill</u>, 513 F.3d 1293, 1299 (11th Cir. 2008)(citation omitted). "[I]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." <u>Id.</u> (citation omitted). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." <u>United States v. Byrd</u>, 403 F.3d 1278, 1288 (11th Cir. 2005)(quoting <u>United States v. Chastain</u>, 198 F.3d 1338, 1351 (11th Cir.1999)).

III. **Analysis**

The Court will address Defendant's three arguments in turn.

A.   **Qualification for Citizenship**

One recent Supreme Court decision has loomed large throughout this case. In <u>Maslenjak v. United States</u>, 137 S. Ct. 1918 (2017), the Court espoused two methods of "causal inquiry" by which the United States may establish that a defendant procured naturalization with a false statement in violation of § 1425(a).

Under the first method, the United States can prove that the facts "misrepresented [by the defendant] are themselves disqualifying" for citizenship. <u>Id.</u> at 1928. If the misrepresented facts are "themselves disqualifying," then "the jury can make quick work of that inquiry":

> In such a case, there is an obvious causal link between the defendant's lie and her procurement of citizenship. To take an example: An applicant for citizenship must be physically present in the United States for more than half of the five-year period preceding her application. Suppose a defendant misrepresented her travel history to convey she had met that requirement, when in fact she had not. **The Government need only expose that lie to establish that she obtained naturalization illegally — for had she told the truth instead, the official would have promptly denied her application.** Or consider another, perhaps more common case stemming from the "good moral character" criterion. That phrase is defined to

exclude any person who has been convicted of an aggravated felony. If a defendant falsely denied such a conviction, she too would have gotten her citizenship by means of a lie — for otherwise the outcome would have been different. **In short, when the defendant misrepresents facts that the law deems incompatible with citizenship, her lie must have played a role in her naturalization.**

Id. at 1928-29 (citations omitted and emphasis added).

But there is a second method under which the United States may also prove that a defendant procured naturalization through a false statement. Under the second method, "the Government must make a two-part showing" that "the misrepresented fact was sufficiently relevant to one or another naturalization criterion that it would have prompted reasonable officials . . . to undertake further investigation" and "that the investigation 'would predictably have disclosed' some legal disqualification." Id. at 1929 (citations omitted).

"[E]ven when the Government can make its two-part showing [under the investigation theory], however, the defendant may be able to overcome it." Id. at 1930. As Justice Kagan explained, "Section 1425(a) is not a tool for denaturalizing people who, the available evidence indicates, were actually qualified for the citizenship they obtained." Id. "Whatever the Government shows with respect to a thwarted

investigation, qualification for citizenship is a complete defense to a prosecution brought under § 1425(a)." Id.

Defendant asserts she was convicted under the second method — the investigation theory. (Doc. # 104 at 2). And she argues that there was insufficient evidence to convict her of violating § 1425(a) because "it is uncontroverted that Ms. Dureland qualified for citizenship through the derivative petitions of her brother . . . and her husband." (Id.). Defendants writes: "[T]he government presented no evidence that [Defendant] did not qualify, separate and apart from these alleged misrepresentations [about the 1997 Alindor Application], for citizenship." (Id. at 3).

The United States disagrees. First, the United States notes that the defense of qualification for citizenship applies to the second method of proof under Maslenjak — the investigation theory. (Doc. # 105 at 7); Maslenjak, 137 S. Ct. at 1930 ("[E]ven when the Government can make its two-part showing [under the investigation theory], however, the defendant may be able to overcome it."). Here, as the United States stresses, the jury convicted Defendant under the first method of proof under Maslenjak. Indeed, the jury instructions discussed both methods and the verdict form specifically included separate sections for the first and

second methods. (Doc. ## 95, 96). As the verdict form shows, the jury convicted Defendant under the first method. (Doc. # 96). Therefore, Defendant's argument that she established the defense of qualification for citizenship under the investigation theory of Maslenjak is unpersuasive.

Regardless, the United States argues that it did present evidence that Defendant was not qualified for citizenship and that Defendant presented no evidence to refute this. (Doc. # 105 at 6-7). The Court agrees. Here, the United States maintained that Defendant falsely denied having filed another immigration application — the 1997 Alindor Application — during her 2012 naturalization proceedings. The 1997 Alindor Application had been denied and an order of removal issued for Alindor, rendering the applicant ineligible for citizenship. As the United States explains, "[n]either the status of the [D]efendant's brother as a United States citizen nor her alleged husband's status as an asylee from Haiti would have saved this [D]efendant from being placed into deportation proceedings based upon Alindor's October 1997 order of removal." (Doc. # 105 at 8); see also 8 U.S.C. § 1429 ("Notwithstanding the provisions of section 405(b), and except as provided in sections 1439 and 1440 of this title no person shall be naturalized against whom there is outstanding

a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act . . . .").

A reasonable jury could find, as the jury here did, that Defendant was not qualified for the citizenship she obtained in 2012 because the 1997 order of removal entered for Alindor disqualified her. There was no evidence presented that Defendant still would have been qualified for citizenship if she had admitted that she had applied for asylum under a different name and had been ordered deported under that name.

B. **Evidence of a False Statement**

Defendant next contends that the United States "did not prove that Defendant filed the 1997 Alindor Application, or lied about having done so in 2012." (Doc. # 104 at 4). She insists the evidence does not support that Defendant submitted the 1997 application under the name Enite Alindor. According to Defendant, "[t]he government's theory that Defendant filed the 1997 Alindor Application is based on the stand alone fingerprint card . . . and some similarities

between 'Enite Alindor's' physical description and Ms. Dureland's written physical description." (Id. at 5).

But the United States points out that there was more evidence that Defendant submitted the 1997 Alindor Application than just her fingerprints. (Doc. # 105 at 4-5). In addition to the fingerprint card, two passport-style photographs were attached to the Alindor Application, which the jury were able to view. (Doc. # 99 at 9:9-14, 72:14-73:19). The date of birth listed for Alindor is exactly one year off from Defendant's claimed birth date. Both Defendant and the Alindor Application list the same place of birth — in the town of Aquin, Haiti. (Doc. # 103 at 39:2-10, 41:2-13). Other documents submitted by Defendant, including her two birth certificates, refer to "Alindor" as the last name of Defendant's mother. (Doc. # 99 at 237:3-25). When she was arrested, Defendant told Special Agent Lockhart that her mother's maiden name was Alindor. (Doc. # 103 at 19:12-15).

The Court agrees with the United States that a reasonable jury could conclude beyond a reasonable doubt that Defendant submitted the 1997 Alindor Application. Thus, a reasonable jury could conclude that Defendant lied during naturalization proceedings when she denied having submitted another

immigration application and did not acknowledge the order of removal entered for Alindor.

### C. <u>Procuring Citizenship with a False Statement</u>

Finally, Defendant argues: "Even if the government established that [Defendant] filed the 1997 Alindor Application, it did not present sufficient evidence such that a reasonable juror could conclude that investigation 'would predictably have disclosed some legal disqualification,' and therefore that Defendant's misrepresentation 'procured' her citizenship." (Doc. # 104 at 6).

There are multiple problems with this argument. First, again, Defendant was not convicted under the second method described in <u>Maslenjak</u> — the investigation theory — to which Defendant refers. She was convicted under the first method — that the facts misrepresented were "themselves disqualifying" for citizenship. <u>Maslenjak</u>, 137 S. Ct. at 1928.

Second, an order of removal was entered for Alindor in 1997. The United States presented testimony that a naturalization application would be denied if the United States discovered that the applicant had previously had an asylum petition under a different name denied and an order of removal entered. (Doc. # 98 at 73:4-74:14; Doc. # 99 at 82:3-83:2, 96:4-98:11). For example, the United States asked

Adjudicator Agathos "if . . . the order of removal was final in the file of this other identity that you found out, what happens to the N-400 [application for naturalization]? How significant[ly] does it impact that?" (Doc. # 99 at 97:8-11). Agathos replied that "[i]t would be denied." (Id. at 97:12).

Therefore, after concluding that Defendant had submitted the 1997 Alindor Application, a reasonable jury could conclude that Defendant was therefore disqualified from naturalization. Because Defendant did not reveal in her naturalization paperwork or interview that she submitted the 1997 Alindor Application or had been ordered deported, a reasonable jury could conclude beyond a reasonable doubt that Defendant procured her naturalization by those false statements. See Maslenjak, 137 S. Ct. at 1928-29 ("[W]hen the defendant misrepresents facts that the law deems incompatible with citizenship, her lie must have played a role in her naturalization.").

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Renewed Motion for Judgment of Acquittal (Doc. # 104) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 9th day of April, 2018.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE